BARTLEY COX *v.* ABNER ROBINSON and others.

Every thing must be stated in the petition, which it is necessary for the defendant to know in order to put him on his defence.

The allegation in the petition, in an action against the principal and sureties on an attachment bond, that plaintiff has sustained damages " by the wrongful attachment, seizure, and detention of the slaves attached, whereby he has been deprived of his property, and of the services and wages of the slaves," accompanied with a prayer for the amount of such damages, and for general relief, will not support a verdict for the value of the slaves.

To recover damages for an illegal attachment, or for the hire of slaves seized by attachment, it is not necessary to put the attaching party in default. But where an attachment has been levied on slaves, and they have, with the consent of the debtor, remained in the hands of the plaintiff in attachment, to enable the former to recover their value, the latter must be put in default otherwise than by the institution of suit.

Where a plaintiff voluntarily abandons his attachment, he renders himself and his surety responsible in damages ; and where such attachment has been set aside by order of court, it is *prima facie* evidence that it was illegally issued, and that damages to some extent have been sustained.

APPEAL from the Commercial Court of New Orleans, *Watts, J.*

GARLAND, J. The petition alleges that in April, 1830, the defendant Robinson commenced a suit by attachment in the District Court of the First District, against the plaintiff, and one Joshua Cox, to recover about $4600 with interest, which he alleged to be due to him on a promissory note executed by Joshua Cox and the present plaintiff, by virtue of which writ fourteen slaves belonging to the plaintiff were seized ; that for the purpose of obtaining the writ of attachment, the defendant Robinson entered into bond, and gave Nathan Morse as his security, for the sum of $7000, conditioned that they would jointly and severally pay all such damage as the defendants in the attachment suit should suffer, in case the attachment should prove to have been wrongfully sued out.

It is further alleged, that sometime subsequent to the filing of the first petition, Robinson presented a supplemental petition, in which he claimed of the plaintiff and Joshua Cox, the sum of $5903 87 with interest and costs, which was prayed to be satisfied out of the slaves attached ; and that in order further to secure and indemnify the petitioner and Joshua Cox, Robinson, with N.

& J. Dick & Co., entered into another bond, in the usual form, for $9000, conditioned to pay all costs and damages which might be sustained by the defendants in the attachment, in case it should be wrongfully sued out.

The petitioner represents that the said attachment was wrongfully sued out, and that, in April, 1834, Robinson was nonsuited on his original and supplemental petitions.

The plaintiff further represents that in consequence of the wrongful suing out of said attachment he has suffered damage to the amount of $30,000. The said damage is alleged to have been caused by the wrongful seizure and detention of the fourteen slaves, whereby the plaintiff was " deprived of his property and of the services and wages of said slaves," since the     day of April, 1830. He avers that he has sustained damage to the amount of $10,000, in the loss of their services and wages, besides the deprival of his property, the expenses and charges accrued in defending the suit, the time necessarily consumed and the vexation caused by it, amounting in the whole to $30,000, which the defendants refuse to pay. After the ordinary prayer for a citation, &c., the plaintiff asks that the defendants may, jointly and severally, be " decreed to pay the said sum of $30,000, and that all such further and other relief may be had as the nature of the case shall require."

It is not necessary to notice the answers of the widow and heir of Nathan Morse, as they are not appellants from the judgment against them ; nor that of N. & J. Dick & Co., as the proceedings against them were discontinued by the plaintiff previous to the trial.

The answer of the defendant Robinson, denies that the plaintiff has sustained any damage as alleged. He avers that his attachment was issued in good faith and for a debt justly due, and only intended to secure the debt in a lawful manner ; that it was discontinued for technical causes and reasons, not in any manner affecting the merits of the case ; that another attachment was issued for the same debt, immediately after the dissolution of the first, which is still pending, on which ample security is given, and that the plaintiff must look for final indemnity to the bond given in that case.

Cox v. Robinson and others.

On the trial it was proved that, sometime in the year 1825, the defendant Robinson became possessed by endorsement of a promissory note given by Joshua Cox and Bartley Cox to one Powell, for about the sum of $4600. In September, 1826, Robinson commenced a suit on this note in Madison county in the State of Alabama, against both the drawers. They made a defence to the action, Joshua Cox being the most active and principal defendant. In April, 1830, Robinson, who is a non-resident of the State, meeting with the plaintiff in New Orleans, where he had the slaves, who were attached, for sale, commenced a suit against him, and had his property seized, without saying any thing about the suit which had been pending in Alabama for several years previously. The defendant, at different times, asked to see the notes or instrument of writing on which this demand was founded, before filing his answer; but it was not produced, although twice ordered by the court. In December, 1830, the defendant Robinson filed his supplemental petition, in which he stated the fact that he had, before issuing the attachment, commenced a suit in Alabama, and further stated that he had since obtained a judgment on the note, inclusive of principal and interest, amounting to $5903 87 and costs, and prayed for a judgment for that sum, with interest and costs, to be paid out of the property attached. He made affidavit to the justice of the claim, and produced a record from the Circuit Court of Madison county, Alabama, to sustain his demand, but did not state, what was the fact, that Joshua and Bartley Cox had taken out a writ of error, under which the case was then pending in the Supreme Court of Alabama. Sometime after the filing of this supplemental petition, the Supreme Court of Alabama reversed the decision of the Circuit Court of Madison county in favor of Robinson, and remanded the cause for a new trial; whereupon Robinson voluntarily dismissed his suit in that court, and upon the production here of the record from the Supreme Court of Alabama, he was nonsuited, having failed to appear and prosecute the suit. It was further shown, that when the slaves were attached in April, 1830, Bartley Cox consented that they should remain in the possession of Robinson, and he at once took possession of them, and has had them ever since. Parol evidence was given of the value of the slaves and of their services. The jury found a verdict for the

plaintiff, for " six hundred dollars as naked damages for wrong-
fully suing out the attachment, and, for the value of the fourteen
slaves including all interest, &c. to date, the sum of eleven thou-
sand three hundred dollars" against Robinson, and for one hundred
dollars against the heirs of Morse ; upon which, after an ineffectual
attempt to obtain a new trial, the defendant Robinson appealed.

In consequence of the jury finding the sum of $11,300 as the
value of the slaves, and saying nothing about their services or hire,
the question has been much discussed at the bar, whether the va-
lue of the slaves was claimed either by the allegations or the prayer
of the petition.   The verdict of a jury ought always to respond
to the issues made by the pleadings, and we always, except in
hard cases, give as liberal an application of the principle as we
can, so as to maintain the verdict and do justice between the
parties.

The counsel for the appellant contends most strenuously, that
he was surprised on the trial by the attempt, on the part of the
plaintiff, to prove the value of the slaves, as the allegations of the
petition did not inform him that such was the character of the de-
mand, nor was any such thing prayed for ; that, therefore, he did
not come prepared with his proof on that part of the case, and
that injustice has been done to him in consequence of this course
of proceeding. We have looked carefully to the allegations in
this petition, not with a view to criticise them, as in a hard case,
but to ascertain what is really claimed.

The allegation is, that the plaintiff has suffered damages to the
amount of thirty thousand dollars, " caused by the wrongful at-
tachment, seizure, and detention of fourteen slaves, whereby your
petitioner has been deprived of his property and of the services
and wages of said slaves since the          day of April, 1830, and
has sustained damages to the amount of ten thousand dollars at
least, in the loss of their services and wages, besides being de-
prived of his property," &c., wherefore he claims $30,000 dama-
ges, and prays for general relief.   The Code of Practice, art. 172,
says that a petition must contain a clear and concise statement of
the object of the demand, as well as of the nature of the title or
cause of action, and this court has more than once said, that every
thing must be stated, which it is necessary for the defendant to

know, to put him on his defence. 6 Mart. 510. 12 Ib. 639. We are constrained to say, in this case, that a claim for the value of the slaves is not set forth in that clear and concise manner contemplated by the law-maker, and we are, therefore, of opinion that the judge erred in permitting evidence to go to the jury of the value of·the slaves, the allegations in the petition not being sufficiently explicit to put the defendant on his guard. The verdict must, therefore, be set aside, as it is clear that the principal object of the jury was to give the plaintiff the full value of the slaves, and to transfer them to the appellant.

In remanding the cause for a new trial, we propose to lay down some principles as applicable to it, which may guide the parties hereafter, and probably bring it to a more speedy termination. In doing so, we shall touch upon many points raised by the parties and decided by the judge of the Commercial Court on the bills of exception, or in his charge to the jury, without stating them as they were raised at the trial, and set forth in detail in the various bills of exception and the charge of the judge.

·In the first place, we are of opinion, that the allegations in the petition in relation to the wrongful suing out of the attachment and the claim for the services of the slaves attached, are sufficiently set forth. That to recover damages for such wrongful suing out of the attachment, or for the hire of the slaves, it is not necessary to put the defendant in default under the article 1927 of the Code ; but if the plaintiff shall claim the value of the slaves as damages, we think he ought to be put in default, the slaves having gone into the appellant's possession by virtue of a special agreement between the parties. It is not material what were the motives that induced the parties to enter into the agreement. It is sufficient that it has been made ; and its effects must be regulated as other similar contracts.

In 8 Mart. N. S. 481, a decision is to be found which would seem to exempt a security on an attachment bond from any liability for damages, when his principal had a good cause of action, but failed to recover on account of some irregularity in the proceedings. The facts of that case are very different from this, and if they were similar, it may be well questioned if the doctrine ·would apply to a principal when sued on his bond.

If a plaintiff in an attachment voluntarily abandons it, he ren-. ders himself and his surety responsible in damages, 3 La. 103; and if it be set aside by order of the court, it is *prima facie* evidence that it was wrongfully issued, and that damage to some extent has been sustained. 3 La. 291.

As to the measure of damages, if it be apparent that the plaintiff in the attachment had a sufficient or very probable cause of action, and was prevented from getting a judgment by some technical objection, or irregularity in the proceedings, which could not be foreseen, then the damages should only be such as the party actually sustained in making his defence, and in being deprived of the use of his property. The probability and justice of the demand may be pleaded, and given in evidence in mitigation or justification of a claim for vindictive damages. After a careful examination of the decision of the judge of the Commercial Court and his charge to the jury, we do not see any error that requires correction, except in his admitting evidence to establish the value of the slaves, and charging the jury that it was not necessary to put the defendants in default, in any other manner than by instituting this suit, to enable the plaintiff to recover the value of the slaves.

As to that portion of the verdict which finds six hundred dollars damages for wrongfully suing out the attachment, we should not disturb it, if we could with propriety separate it from the other part; but as the whole case will go again before a jury, we do not doubt justice will be done to both parties.

The judgment of the Commercial Court is therefore reversed and annulled, and the cause remanded for a new trial, with directions to the judge to conform to the principles herein expressed, and otherwise proceed according to law; the plaintiff paying the costs of this appeal.

*R. Hunt* and *Lockett*, for the plaintiff.

*Grymes*, for the appellant.